# United States Court of Appeals
*for the*
# Ninth Circuit

### Case No. 14-55113

SAFARI CLUB INTERNATIONAL AND JOHN WHIPPLE
*Plaintiffs - Appellants,*

— vs —

DR. LAWRENCE P. RUDOLPH
*Defendant - Appellee.*

On appeal from ruling dated January 16, 2014 Denying Plaintiffs'
Application for Preliminary Injunction
Central District Court of California – Southern Division, Santa Ana
The Honorable James V. Selna
Case No. SACV13-01989 JVS (ANx)

## APPELLEE DR. LAWRENCE P. RUDOLPH'S ANSWERING BRIEF

DUANE MORRIS LLP
Patricia P. Hollenbeck (SBN 121765)
*E-mail*:PHollenbeck@duanemorris.com
Michelle Hon Donovan (SBN 234492)
*E-mail*:MHDonovan@duanemorris.com
Heather U. Guerena (SBN 238122)
*E-mail*: HUGuerena@duanemorris.com
750 B Street, Suite 2900
San Diego, CA 92101

Attorneys for Defendant and Appellee
DR. LAWRENCE P. RUDOLPH

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....................................................................1

II. STATEMENT OF JURISDICTION ......................................3

III. STATEMENT OF ISSUES .................................................3

IV. STATEMENT OF THE CASE ............................................4

V. STATEMENT OF FACTS ...................................................6

VI. SUMMARY OF LEGAL ARGUMENTS ...........................10

VII. THE APPEAL OF THE INTERLOCUTORY ORDER IS MOOT.............10

VIII. STANDARD OF REVIEW ...............................................12

IX. THE DISTRICT COURT APPLIED THE CORRECT LAW
    THEREFORE THE DENIAL MUST BE AFFIRMED...............................13

    A. Appellants Cannot Meet The Statutory Definition Of What
       Constitutes A "Protected Confidential Communication" Under
       California Penal Code Section 632 To Establish A Likelihood
       Of Success On The Merits. .....................................15

       1. The Communication In a Restaurant Between
          Adversaries Could Not Be Considered Confidential...............15

       2. Appellants Fail To Identify Any Law Supporting Their
          Contention That The Facts In This Matter Could Be
          Considered Confidential. ...................................18

       3. Appellants Failed To Establish A Serious Question of
          Law.........................................................21

    B. Appellants Failed to Establish Their Marginal Irreparable Harm
       Outweighs the Other Findings By The District Court. ....................23

    C. Appellants Failed To Present Any Evidence To Show Error As
       To The Balance of Hardships.........................................25

DM1\4684498.2

     D.     Appellants Failed To Establish The District Court Abused Its Discretion In Not Finding That The Public Interest Weighs Strongly In Plaintiffs' Favor. .............................................................27

X.     CONCLUSION.................................................................................28

DM1\4684498.2

# <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Alliance for the Wild Rockies v. Cottrell,*
   632 F.3d 1127 (9th Cir. 2011) ............................................... 14, 21-22

*Chamberlain v. Les Schwab Tire Ctr. of Cal., Inc.,*
   2012 U.S. Dist. LEXIS 171325 (E.D. Cal. Nov. 30, 2012)................... 16-17, 24

*Davis v. Los Angeles W. Travelodge,*
   No. CV 08-8279 CBM CTX, 2009 U.S. Dist. LEXIS 119173
   (C.D. Cal. Oct. 8, 2009) ...........................................................16

*Earth Island Inst. v. U.S. Forest Serv.,*
   442 F.3d 1147 (9th Cir. 2006) ............................................... 12-14

*In Defense of Animals v. United States DOI,*
   648 F.3d 1012 (9th Cir. 2011) ...................................................11

*K.D. v. Oakley Union Elementary Sch. Dist.,*
   2008 U.S. Dist. LEXIS 9559, No. C 07-00920,
   (N.D. Cal. Feb. 8, 2008) ...................................................... 24-25

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League,*
   634 F.2d 1197 (9th Cir. 1980) ...................................................25

*Mazurek v. Armstrong,*
   520 U.S. 968 (1997)...............................................................14

*Montone v. Radio Shack,*
   698 F.Supp. 92 (E.D. PA 1988)...................................................27

*Perfect 10, Inc. v. Amazon.com, Inc.,*
   508 F.3d 1146 (9th Cir. 2007) ...................................................12

*In re Sealed,*
   737 F.2d 94 (D.C. Cir. 1984)....................................................18

*Tarnoff v. Wellington Financial Corp.,*
   696 F. Supp. 151 (E.D. Pa. 1998)................................................27

DM1\4684498.2

*Turnbull v. ABC*,
    2004 U.S. Dist. LEXIS 24351 (C.D. Cal. Aug. 19, 2004) ...............................19

*Turnbull v. ABC*,
    2005 U.S. Dist. LEXIS 47528 (C.D. Cal. Mar. 7, 2005)..............................17, 19

*Ventura County Christian High School v. City of San Buenaventura*,
    233 F.Supp.2d 1241 (C.D. Cal. 2002) ................................................................24

*Winter v. Natural Res. Def. Council, Inc.*,
    129 St. Ct. 365 (2008)........................................................................... 13-14, 19

*In re Zavala*,
    505 B.R. 268 (C.D. Cal. 2014) .........................................................................13

## State Cases

*Lieberman v. KCOP Television, Inc.*,
    110 Cal. App. 4th 156 (Cal. App. 2d Dist. 2003)......................................... 20-21

*Hataishi v. First American Home Buyers Protection Corp.*,
    223 Cal. App. 4th 1454 (2014) .........................................................................16

*People v. Crow*,
    28 Cal. App. 4th 440 (1994) .................................................................22, 25, 27

*Stessman v. American Black Hawk Broadcasting Co.*,
    416 N.W.2d 685 (Iowa 1987) ...................................................................... 18-19

## Other Authorities

Cal. Penal Code § 632....................................................4, 6-9, 15-16, 18-22, 25-26

Cal. Penal Code § 637.2..............................................................................................4

https://www.youtube.com/watch?v=on-gOHKKhUE.............................................11

iv

# I.    <u>INTRODUCTION</u>

The Plaintiffs and Appellants, Safari Club International ("SCI") and John Whipple ("Whipple") (collectively referred to as "Appellants") appeal the District Court's denial of their request to enjoin Defendant and Appellee, Dr. Lawrence Rudolph ("Dr. Rudolph") from disseminating a recording of a lunch conversation between Whipple and Dr. Rudolph that occurred in a public restaurant while they were adversaries in litigation.  The request was properly denied.

The parties are currently embroiled in multiple lawsuits pending in two other federal court actions in other states.  One action is in Pennsylvania; the other is in Wyoming.  Both actions involve the same general issues – Dr. Rudolph seeks damages for defamatory conduct by Appellants.

The legal dispute between the parties began almost two years ago and has been pending before the U.S. District Court, Western District of Pennsylvania for over a year, where Dr. Rudolph filed an action seeking damages for the defamatory actions of Appellants.  The individual defendants were dismissed, and Dr. Rudolph refiled against certain defendants in U.S. District Court in Wyoming.

Instead of seeking relief in either or both of the pending Federal Court actions, Appellants filed a new action in California State Court.  The State Court Action sought to enjoin Dr. Rudolph from using a video recording in the Pennsylvania and Wyoming Federal Court actions.  The recording Appellants seek

to exclude is of a conversation between Whipple and Dr. Rudolph concerning the actions pending in Pennsylvania and Wyoming, and the defamatory statements and allegations SCI made against Dr. Rudolph. The recording is both dispositive of Dr. Rudolph's defamation claims and exonerates him of SCI's false allegations. Under Pennsylvania law, the video is admissible. Consequently, Appellants sought relief in California.

The District Court properly found that Appellants did not and cannot meet the rigorous burden of proof required for injunctive relief, as they are unlikely to succeed on the merits of their claim. The Invasion of Privacy Act only applies to confidential communications. Appellants admit that the conversation between Whipple and Dr. Rudolph took place in a public restaurant in the presence of other patrons and restaurant employees, at a time when Whipple and Dr. Rudolph were directly adverse to one another in pending litigation. Furthermore, the substance of the conversation concerned the facts underlying Dr. Rudolph's defamation claims. Therefore, the communication was not confidential.

In addition, any harm to Plaintiffs' reputation and goodwill (if any) from disclosure of the recording is a result of Whipple's candid statements regarding his assessment of the political motivations of other SCI members that led to Dr. Rudolph's expulsion. Whipple's admissions do not constitute irreparable harm, especially considering that the recording may be used for impeachment.

2

Further, any alleged harm to Appellants is outweighed by the harm to Dr. Rudolph if he is in enjoined from using this dispositive video in his defamation actions.

Since the time the District Court denied the preliminary injunction and dissolved the temporary restraining order, portions of the video[1] sought to be enjoined have been disseminated on the internet; therefore, the request sought is moot and the appeal should be dismissed.

Even if the appeal was not moot, the District Court properly denied the preliminary injunction, and Appellants have failed to establish any reversible error. Thus, Dr. Rudolph respectfully requests this Court affirm the District Court's order.

## II. STATEMENT OF JURISDICTION

Dr. Rudolph agrees with the Appellants' statement as to the basis of jurisdiction.

## III. STATEMENT OF ISSUES

Dr. Rudolph agrees with Appellants' statement of the issues.

The District Court did not commit reversible error; therefore, the order denying the preliminary injunction should be affirmed.

---

[1] Dr. Rudolph created a promotional video that included clips from the recording of his conversation with Whipple. The video was intended to clear his name. AER033; Case No. 14-55113, DktEntry 12-2, Ex. A.

Further, there are no grounds to find that the District Court erred in dissolving the temporary restraining order.

## IV.   STATEMENT OF THE CASE

On December 18, 2013, Appellants filed an action against Dr. Rudolph in Superior Court of California for the County of Orange asserting claims for invasion of privacy under California Penal Code sections 632 and 637.2 and injunctive relief.  Appellants' Excerpts of Record ("AER") 146-155.  On December 19, 2013, Appellants sought a temporary restringing order ("TRO"), for which they gave Dr. Lawrence notice the day prior to the hearing, without serving the complaint.  The TRO was granted and an order to show cause why the preliminary injunction should not issue was set for January 3, 2014.  AER011-014.  On December 23, 2013, Dr. Rudolph removed the action to federal court.  On December 30, 2013, the District Court ordered that the briefing and hearing schedule in the underlying action remain in effect.  AER159, Dkt 6.

On January 3, 2014, the parties presented argument to the District Court and subsequently filed a copy of the video, a transcript of the video, and Dr. Rudolph's editorial with clips from the video at issue.  AER095-122; AER033; Appellee's Supplemental Excerpts of Record ("SER") 0041-0174; Case No. 14-55113, DktEntry 12-2.  The District Court took the matter under submission.  On January 16, 2014, the District Court denied the Preliminary Injunction on the grounds that

SCI failed to meet its burden to establish that there was a reasonable expectation that the communication would be free from recording or being overheard by others. The Court summarized its findings based on its review of the video as follows:

> Rudolph and Whipple appear to be seated in a restaurant booth, …
>
> There is background noise throughout consisting of music and somewhat muffled voices. However, from approximately 14:50 to 15:09, there is a louder conversation in the background that is just faint enough not to be understandable.
>
> Several times wait staff pass in the background within 5 or 6 feet. There was no change in the volume or flow of the conversation. At one point (14:17), loud footsteps can be heard, likely a woman's heels. Again, there was no change in the volume or flow of the conversation.
>
> Behind Whipple's left shoulder, there is a mirror. (E.g., Video at 13:550.) The mirror appears to show a booth with occupants. The Court estimates that the mirror was 5-6 feet from Rudolph and Whipple, and that the booth in the mirror was about 10-12 feet from the mirror.
>
> There were more than a half dozen interactions with the waiter. At no time did Rudolph or Whipple overtly lower their voices or curtail the conversation. **There was nothing in Whipple's body language to suggest he was attempting to maintain privacy**. The interchanges at 13:53 (Tr. 4-5), 14:39 (Tr. 74), and 15:01 (Tr. 103) reflect a usual pause at a restaurant table when a waiter asks for the order or brings an order. Between 14:42 and 14:46 (Tr. 79-84), there are numerous interchanges, and Rudolph and Whipple maintain the stream of their conversation.
>
> **There is no indication that either Rudolph or Whipple regarded the conversation as confidential or took steps to conceal or limit the hearing of the conversation.**

AER003-4, emphasis added. The Court specifically found that the "nature of the place was not conducive to an expectation of confidentiality. As noted in the Court's summary of the Video, there were numerous opportunities to be overheard, and no efforts at confidentiality were taken." AER005. Therefore, the conversation was not "confidential" within the meaning of California Penal Code § 632(c). AER004-5. The District Court also found that the public interest tipped in favor of Dr. Rudolph since the video was relevant to the disputes between the parties in pending litigation. AER006-7.

The District Court dissolved the TRO effective 5:00 p.m. on January 17, 2014, in order to provide Appellants' sufficient time to seek extraordinary relief from this Court. AER007.

Appellants timely appealed. Although the January 16, 2014, order specifically stated that it provided Appellants with time to request relief from the 9th Circuit, Appellants submitted their Motion to Stay the Lower Court Action after the TRO dissolved. [Case No. 14-55113, DktEntry 1 and 5.] This Court denied the motion to stay. [Case No. 14-55113, DktEntry 21.]

## V.     STATEMENT OF FACTS

For decades, Dr. Rudolph has enjoyed an excellent reputation as a member of the international hunting community. SER0001. He has been very active in pro-hunting and conservation groups such as SCI. SER0002. Dr. Rudolph has

been a member of SCI for approximately twenty-five years and a "life member" since 2006. *Id.* In 2007, Dr. Rudolph received one of the most prestigious awards in the community, the Weatherby Award, which annually recognizes one individual for outstanding support of wildlife conservation, lifetime hunting achievement, and dedication to the principles of ethical sport hunting. *Id.* As an SCI member, Dr. Rudolph has served as SCI Director-at-Large, Safari Club International Foundation (SCIF) Director, SCI-PAC Chairman, Marketing Chairman, National Fundraising Chairman, and on many other committees including the SCI Executive Committee. *Id.* Dr. Rudolph served as President of SCI and SCIF for two consecutive yearlong terms between 2009-2011. *Id.* In the forty-year history of SCI, only four Presidents have served consecutive terms. *Id.* Following his second term as President of SCI, Dr. Rudolph signed an employment contract to perform public relation functions for SCI as their Chief Communications Officer. *Id.*

A dispute arose between Dr. Rudolph and Appellants in early 2012 arising from false allegations made against Dr. Rudolph by an SCI member and political opponent of Dr. Rudolph, including but not limited to: (i) adultery; (ii) making false statements in a campaign video; (iii) using intellectual property without authority; (iv) spelling members' names wrong; (v) wrongful reimbursement claims; (vi) travel without executive approval; and (vii) making false statements to

7

the SCI Board of Inquiry.  *Id*.  Based on these false allegations, the SCI Board

terminated Dr. Rudolph's contract as Chief Communications Officer, expelled him

from membership in SCI and stripped him of all his awards and record book

entries.  *Id*.  Whipple, who was President of SCI at the time, sent a letter on behalf

of SCI to the governing boards of organizations in which Dr. Rudolph was a

member notifying them of the false and unsubstantiated charges against

Dr. Rudolph, seeking to remove Dr. Rudolph's name from all World Hunting

Awards that he had earned.  SER0003.

On November 21, 2012, Dr. Rudolph initiated a civil suit in Pennsylvania

against Appellants and other SCI Board Members seeking to recover damages

caused by this defamation.  SER0005; SER0017-40.  On February 20, 2013,

Dr. Rudolph and Whipple agreed to meet for lunch at Wineworks for Everyone.

AER003-004.  The parties sat in the middle of the restaurant and openly discussed

the pending lawsuit, in which they were adversaries.  AER003-004; SER0045-174;

Case No. 14-55113, DktEntry 12-2, Ex. A.  Dr. Rudolph recorded the

conversation, which picked up both audio and video.  AER003-004.  There is no

indication in the video that either Dr. Rudolph or Whipple regarded the

conversation as confidential or took any steps to conceal or limit the hearing of the

conversation.  AER003-004.  During the conversation, Whipple admitted that the

defamatory statements were made up because another member in SCI had a personal vendetta against Dr. Rudolph. AER003-004; SER0045-174.

Whipple and the other individually named defendants in the Pennsylvania federal court action were subsequently dismissed for lack of personal jurisdiction on March 20, 2013. SER0005; AER126-136. However, the Pennsylvania case is still pending against SCI. *Id.* The parties have engaged in written discovery and one deposition has taken place.[2] SER0005.

On August 20, 2013, Dr. Rudolph re-filed his defamation action against the individual defendants in the District of Wyoming, the district where the defamatory allegations were made during an SCI Board meeting.[3] SER0017-19. The Wyoming case is still pending at the pleading stage. *Id.;* AER137-141.

The video that Appellants seek to exclude contains statements made by Whipple, SCI's then President, which are dispositive of Dr. Rudolph's defamation claims and exonerate him of the false allegations made against him by SCI. SER0005.

_____

[2] In June 2013, counsel for Dr. Rudolph filed a motion seeking to extend the time for discovery to allow counsel to undergo treatment for an emergency cardiac condition. SER0005. The Court granted the motion, in part, by administratively closing the case until the parties were able to complete discovery and make a joint petition stating that the case was ready for trial. SER0005; SER0017-19. The case is still pending and the parties continue to engage in discovery. SER0005.

[3] Whipple was not named as a defendant in this second suit.

## VI.     SUMMARY OF LEGAL ARGUMENTS

First, this interlocutory appeal from the denial of a preliminary injunction is moot because the video dissemination sought to be enjoined has taken place. When the TRO dissolved, Dr. Rudolph was free to disseminate the video or any portion thereof, which he did.  AER020, AER033.  Once disclosed on the internet he has no control over the viewing or copying of the video.  This act cannot be undone.

Second, the District Court properly applied the law, and there is no "clear error" in its interpretation of the facts, thus, the denial of the preliminary injunction must be affirmed.

## VII.     THE APPEAL OF THE INTERLOCUTORY ORDER IS MOOT.

This Court should dismiss the appeal because the relief sought is moot.  SCI appeals the interlocutory order denying the preliminary injunction to prohibit the dissemination of the recording of a lunch conversation between Dr. Rudolph and Mr. Whipple.  AER001-7.  The previously entered TRO dissolved on January 17, 2014.  AER007.  The excerpts from the video were disseminated on January 20, 2014.  AER033.  On January 17, 2014, SCI requested this Court stay enforcement of the January 16, 2014 order pending appeal, which was denied.  Case No. 14-55113, DktEntry 21.

As this Court held in *In Defense of Animals v. United States DOI,* 648 F.3d 1012 (9th Cir. 2011), if the action to be enjoined has already occurred, there is nothing for the court to determine; therefore, the appeal is moot. *Id.* at 1013. In *In Defense of Animals*, Plaintiffs sought to enjoin the United States Department of the Interior, Bureau of Land Management, from rounding up horses. The district court denied the injunction and the Plaintiffs appealed. Subsequently, the Department rounded up the horses. This Court concluded that:

> The initial stage of the plan has, however, now concluded and the roundup has taken place. This appeal, therefore, is moot. We reached the same conclusion in a similar case. *Am. Horse Prot. Ass'n, Inc. v. Watt,* 679 F.2d 150, 151 (9th Cir. 1982) (noting that the court "cannot order [the completed roundup's] effects undone"). … We hold only that this interlocutory appeal from the denial of a preliminary injunction is moot because the roundup sought to be enjoined has taken place.

*In Def. of Animals,* 648 F.3d at 1013. The same is true for content posted on the internet.

Once content is released on the internet, the dissemination of information cannot be undone. Indeed, according to Youtube, the video has receive 958 views as of the date of this briefing. *See* https://www.youtube.com/watch?v=on-gOHKKhUE. Additionally, due to the nature of digital content, once it is made publically available on the internet it can continue to exist in perpetuity as it is copied and shared. Even if Dr. Rudolph was to remove his video from YouTube, he has no control over, or even knowledge of, other copies that may have been

11

shared or disseminated. Thus, this interlocutory appeal from the denial of a preliminary injunction is moot because the video dissemination sought to be enjoined has taken place and cannot be undone.

Even if the appeal where not moot, the District Court ruling still must be affirmed.

## VIII.   STANDARD OF REVIEW

This Court reviews "the district court's grant or denial of a preliminary injunction for an abuse of discretion." *Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1157 (9th Cir. 2007), *citing A&M Records, Inc. v. Napster, Inc.* ("*Napster*"), 239 F.3d 1004, 1013 (9th Cir. 2001). "A court abuses its discretion if it based its decision on an erroneous legal standard or clearly erroneous findings of fact." *Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1156 (9th Cir. 2006). "The district court must support a preliminary injunction with findings of fact, which we review for clear error." *Perfect 10,* at 1157, (citing *Earth Island*, at 1156). The court reviews "the district court's conclusions of law de novo." *Perfect 10,* at 1157, (citing, *Napster*, 239 F.3d at 1013). As noted in *Earth Island*:

> We "typically will not reach the merits of a case when reviewing a preliminary injunction …. By this we mean we will not second guess whether the court correctly applied the law to the facts of the case, which may be largely undeveloped at the early stages of litigation. As long as the district court got the law right, it will not be reversed simply because the appellate court would have arrived at a different result if it had applied the law to the facts of the case."

*Earth Island,* at 1156, (quoting*, Earth Island Inst.*, 351 F.3d at 1298, quoting *Rucker v. Davis*, 237 F.3d 1113, 1118 (9th Cir. 2001) (*en banc*)).

Further, "it is well established that issues or theories not properly raised or presented in the trial court may not be asserted on appeal, and will not be considered by an appellate tribunal. A party who fails to raise an issue in the trial court has therefore waived the right to do so on appeal." *In re Zavala*, 505 B.R. 268, 273 (C.D. Cal. 2014) (quoting *In re Marriage of Eben-King & King*, 80 Cal. App.4th 92, 117, 95 Cal. Rptr. 2d 113 (2000); *Iliff v. Dustrud*, 107 Cal. App.4th 1201, 132 Cal. Rptr. 2d 848 (2003) [holding that appellant's argument regarding timeliness of appellee's motion to set aside the renewal of judgment was waived because that argument was not raised in the trial court]).

Appellants have failed to identify any reversible error. The District Court properly applied the law and the facts, therefore, the order denying the preliminary injunction must be affirmed.

## IX.     THE DISTRICT COURT APPLIED THE CORRECT LAW THEREFORE THE DENIAL MUST BE AFFIRMED

The parties agree that the District Court properly relied on *Winter v. Natural Res. Def. Council, Inc.*, 129 St. Ct. 365 (2008), in setting forth the standard for Preliminary Injunction. AER001; Appellants' Opening Brief ("AOB") p. 12-13 (Case No. 14-55113, DktEntry 18-1). It was the Appellants' burden to establish "(1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm

if the preliminary relief is not granted, (3) the balance of equities favors the plaintiff, and (4) the injunction is in the public interest." *Id*.; *Winter*, 129 S. Ct. at 364. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *see also Earth Island*, 626 F3d at 469 (plaintiffs "face a difficult task in proving that they are entitled to this 'extraordinary remedy'").

The District Court not only found that Appellants failed to meet their burden under *Winters*, but also held that it "would reach the same conclusion even if it employed the sliding scale test. AER005, fn. 6. In the Ninth Circuit, the *Winter* factors may be evaluated on a sliding scale: 'serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest.' *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). The balance of hardships and the public interest do not cure the weaknesses in the merits showing." AER005, fn. 6.

The District Court properly applied the law and there is no clear error in its interpretation of the facts; thus its determination that Appellants' failed to meet the standard to obtain a preliminary injunction stands.

DM1\4684498.2

**A.**    **Appellants Cannot Meet The Statutory Definition Of What Constitutes A "Protected Confidential Communication" Under California Penal Code Section 632 To Establish A Likelihood Of Success On The Merits.**

    1.    The Communication In a Restaurant Between Adversaries Could Not Be Considered Confidential.

Contrary to Appellants' assertion, the District Court evaluated whether they were likely to prevail on the merits using the proper law. California Penal Code section 632, subdivision a, states:

> Every person who, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500), or imprisonment in the county jail not exceeding one year, or in the state prison, or by both the fine and imprisonment…

Cal. Penal Code § 632(a); AER002. To qualify for protection under Section 632, the conversation must be "confidential," meaning that there is a reasonable expectation that the conversation will not be recorded or overheard. Cal. Penal Code § 632. The statute defines a confidential communication as follows:

> The term "confidential communication" includes any communication carried on **in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto**, **but excludes** a communication made in a public gathering or in any legislative, judicial, executive or administrative proceeding open to the public, or **in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded**.

Cal. Penal Code § 632(c), emphasis added; AER002. The courts have interpreted this to be an objective, rather than a subjective, confidentiality standard. *Hataishi v. First American Home Buyers Protection Corp.*, 223 Cal. App. 4th 1454, 1457 (2014) (quoting *Flanagan v. Flanagan,* 27 Cal.4th 766, 777 (2002)). The undisputed law states that a conversation that occurs in a public place where other people are present cannot be confidential under Section 632. *See e.g. Chamberlain v. Les Schwab Tire Ctr. of Cal., Inc*., 2012 U.S. Dist. LEXIS 171325, *6-7 (E.D. Cal. Nov. 30, 2012). The recording was made in a public place and is expressly exempted under the statute. *Davis v. Los Angeles W. Travelodge*, No. CV 08-8279 CBM CTX, 2009 U.S. Dist. LEXIS 119173, at *4 (C.D. Cal. Oct. 8, 2009) (finding that there was no reasonable expectation of privacy because the conversation took place in a hotel lobby, a public place).

The evidence supports the District Court's determination that the parties were in a public area of an intimate restaurant where numerous other patrons were seated and wait staff walked past at regular intervals. AER003-5; AER148-150; SER0005; Case No. 14-55113, DktEntry 12-2, Ex. A. At any time during the lunch additional patrons could be seated directly next to the parties. Further, the room was so small that even with the distance between tables, the patrons could hear what was being said at other tables. In other words, the conversation took place in a public place, in the presence of restaurant employees and customers.

AER003-5.  Therefore, there is no objectively reasonable expectation that the conversation would not be overheard.  *Chamberlain v. Les Schwab Tire Ctr. of Cal., Inc.,* 2012 U.S. Dist. LEXIS 171325 (E.D. Cal. Nov. 30, 2012)("Because the conversations occurred in public places with people around, the Court finds that neither Mr. Dollarhide nor Mr. Miller had a reasonable expectation that their conversations would not be overheard or recorded."); *Turnbull v. ABC*, 2005 U.S. Dist. LEXIS 47528 (C.D. Cal. Mar. 7, 2005) (upholding jury special verdict that a reasonable person would have expected that the conversation may be overheard when other people are in the room).

The context and content of the conversation between Whipple and Dr. Rudolph is particularly important and persuasive because, at the time of the conversation and the recording, Whipple was a named defendant, and President of co-defendant corporation SCI, in the defamation lawsuit brought by Dr. Rudolph. The conversation between Whipple and Dr. Rudolph specifically addressed the claims made by Dr. Rudolph in the lawsuit.  Whipple was obviously aware of the actions he took, and the actions taken by SCI against Dr. Rudolph.  And he clearly understood he was a defendant in an action filed by Dr. Rudolph.  Yet in the conversation he exonerates Dr. Rudolph.  Given the setting and the content of the discussion, Whipple had no privacy expectation.  It is irrelevant whether Whipple actually thought the conversation was confidential.  The critical determination is

whether a reasonable person in the situation would believe there was a basis for confidentiality. There is no such basis.

        2.    <u>Appellants Fail To Identify Any Law Supporting Their Contention That The Facts In This Matter Could Be Considered Confidential.</u>

Appellants attempt to justify a determination that Whipple had an expectation of privacy citing a variety of cases; however, none are on point.

First, *In re Sealed*, 737 F.2d 94 (D.C. Cir. 1984) does not address confidentiality under Section 632 nor does it have any bearing on privacy issues. In fact, *In re Sealed* addresses whether the attorney-client privilege applied. The standards for whether the attorney-client privilege applies is a completely different standard than what is required for Section 632. Thus, the case is inapposite.

The *Stessman v. American Black Hawk Broadcasting Co.*, 416 N.W.2d 685 (Iowa 1987), case is also inapplicable. This is an Iowa case deciding whether to sustain a dismissal for the common law claim of intrusion upon the seclusion of another. The issue was whether there were any conceivable facts that could support a claim that the plaintiff was secluded while in a restaurant. The Court held that "[t]o film a person in a <u>private dining</u> room might conceivably be a highly offensive intrusion upon that person's seclusion." *Id.* at 687 (emphasis added). The Court was careful to note that it was not suggesting that the plaintiff was

actually secluded, but that nothing in the petition suggested that she was not. *Id*. at 688.

*Stessman* cannot be applied to the present case. *Stessman* addressed Iowa common law privacy claims, which do not apply the same or even a similar standard as a Section 632 claim. Further, unlike *Stessman*, the pleadings in this case clearly establish that the parties were not in a private dining room, but were in the public area of a restaurant, which was open to the general public and had other patrons and employees present while the conversation took place.

Moreover, Iowa's pleading standards are significantly more relaxed than the pleading requirements in federal court. The Iowa court will only grant a motion to dismiss if there are ***no facts that could conceivably*** support the pled cause of action. In contrast, to prevail on their preliminary injunction motion in this action the Appellants needed to establish a likelihood of success on the merits. *Winter,* 129 S. Ct. at 374. They did not.

*Turnbull v. ABC*, 2004 U.S. Dist. LEXIS 24351 (C.D. Cal. Aug. 19, 2004), the only California case cited by Plaintiffs, is also inapplicable. As noted by the court in *Turnbull*, the workshops that were being recorded were small and private. *Id.* at *32. The conversations took place in a private room, usually between two or three people talking to each other in one corner of the room. *Id.* They did not

occur in a public place of business, in the middle of the restaurant, in the presence of other people, between adversaries in litigation.

Appellants' reliance on *Lieberman v. KCOP Television, Inc.,* 110 Cal. App. 4th 156 (Cal. App. 2d Dist. 2003) is also misplaced. There, the plaintiff, Fred Lieberman, sued KCOP Television, Inc. (KCOP), for violation of Penal Code section 632. Two KCOP reporters posing as patients met with Dr. Lieberman at his private office, on two separate occasions. The reporters stated they were seeking a medical examination. Each reporter was accompanied by a companion who was not introduced to Lieberman. The consultations occurred in Dr. Lieberman's private office, where he routinely conducted patient examinations, behind closed doors. During the consultations, the reporters secretly recorded plaintiff Lieberman on both audiotape and videotape, without his knowledge or consent. Excerpts of these recordings were then broadcast as part of a news story.

The conduct in *Lieberman* is distinguishable from the instant matter. As set forth above, *Lieberman* involved a recording in a private doctor's office behind closed doors, whereas in the instant case the recording occurred in an open restaurant between parties opposing one another in pending litigation. In *Lieberman* the substance of the conversation was a medical consultation; here, the conversation pertained to the facts underlying the claims being made by Dr. Rudolph against Whipple, SCI, and others. In addition, the conversation in this

20

case did not occur in private. Restaurant servers regularly approached and walked past the table, and other restaurant patrons could have sat down next to Whipple and Dr. Rudolph at any time. Clearly, others were in a position to overhear the conversation between Dr. Rudolph and Whipple. The District Court's order even noted that at one point there was another conversation between other customers that was "just faint enough not to be understandable." AER003. *Lieberman* had an expectation of privacy with his "patients" (110 Cal. App. 4th at 168-170); Whipple was a defendant and a corporate representative of another defendant in a pending lawsuit filed by Dr. Rudolph wherein they discussed the content of the litigation. It was reasonable for the District Court to determine there was no expectation of confidentiality between the parties.

Finally, Appellants' contend that the mere fact that Dr. Rudolph did not announce that he was recording the conversation supports the conclusion that it was confidential. This argument is unfounded. Appellants cite to no law to support their position. Further, it is contradictory to the standard for determining what constitutes a confidential communication under Penal Code section 632.

3.   Appellants Failed To Establish A Serious Question of Law.

Appellants attempt to contend that under *Cottrell*, the District Court should have found that there were serious questions of law. The District Court specifically found that even if it applied the *Cottrell* standard the Court would have

21

reached the same result because the "balance of hardships and public interest do not cure the weaknesses in the merits showing." AER005, fn 6. Appellants still cannot meet their burden under *Cottrell,* because they haven't raised a serious legal question and established that the hardships fall sharply in their favor.

*Cottrell* requires both a serious legal question **and** a finding that the balance of hardships fall sharply in plaintiff's favor. *Cottrell,* 632 F.3d at 1134-1135. Appellants contend that the legal question is "whether a party may: (1) violate California Penal Code sections 632 ("Section 632") and 637.2 by recording/videotaping another party without their consent and (2) then compound their criminal conduct by utilizing the illegally obtained recording in violation of Section 632(d)." AOB at 13. Appellants' position ignores the District Court's determination, which cannot be overcome: the conversation at issue was not confidential under Section 632. AER003-6. Without a finding of confidentiality, there can be no violation of the California Penal Code, and Rudolph has not, by definition, engaged in "criminal conduct". Appellants have failed to present sufficient facts to objectively support a "serious legal question."

Furthermore, Appellants' second point has no merit. The recording can be used for impeachment irrespective of whether the recording was illegal. In *People v. Crow,* 28 Cal. App. 4th 440 (1994), the court held that an improper recording can be used for impeachment. *Id.* at 452 (citing *Frio v. Superior Court,* 203 Cal.

22

App. 3d 1480, 1497 (1988) ["The repugnancy of an opportunity for a witness who was recorded to lie in this situation is akin to the circumstances of a criminal defendant who testifies at variance with an earlier statement ruled inadmissible because of a violation of *Miranda*."]).  There is only the mere allegation of illegality; Appellants have not established any violation of the Penal Code or that there was any "criminal conduct" on the part of Dr. Rudolph.  Thus, there is no serious legal question.

Even assuming Appellants are correct that they created a "serious legal question going to the merits" (which they have not), Appellants would still need to establish that the balance of equities falls sharply in their favor.  For the reasons set forth below, they do not and cannot.

The District Court had reasonable grounds to reach the determination that there was no objective expectation of confidentiality between the parties. Therefore, Appellants could not establish a likelihood of success on the merits.

**B.**     **Appellants Failed to Establish Their Marginal Irreparable Harm Outweighs the Other Findings By The District Court.**

The District Court found that irreparable harm marginally tipped in Appellants' favor, but monetary damages would be sufficient to compensate any incremental harm to Appellants that flowed from recording the meeting.  AER006. Appellants do not dispute application of the law, only that the District Court's

interpretation of the facts was improper.  They have failed to establish any clear error.

Appellants opening brief merely reiterates the point that the court failed to consider Whipple's privacy rights – a privacy interest that Appellants have been unable to establish exists under the law.  There is no reasonable expectation of privacy in a public restaurant surrounded by other patrons and employees. *Chamberlain v. Les Schwab Tire Ctr. of Cal., Inc.,* 2012 U.S. Dist. LEXIS 171325.

Further, the harm complained of does not qualify as irreparable harm because it is self-inflicted.  The case law is well-settled that a preliminary injunction movant does not satisfy the irreparable harm criterion when the alleged harm is self-inflicted.  *Ventura County Christian High School v. City of San Buenaventura,* 233 F.Supp.2d 1241, 1253 (C.D. Cal. 2002) (*citing Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995)); *K.D. v. Oakley Union Elementary Sch. Dist.*, 2008 U.S. Dist. LEXIS 9559, No. C 07-00920, at *11 (N.D. Cal. Feb. 8, 2008).  In this case, the conduct that threatens to harm the Plaintiffs' reputation and goodwill is self-inflicted.  Appellants claim that they will suffer injury to their goodwill and reputation if statements made by Whipple (then President of SCI) are disclosed to the public.  Notably, Appellants do not claim that Whipple's statements are false or made under duress, only that they will be harmed if these candid statements are released to the public and

24

members of SCI. Because the alleged harm is caused by Plaintiffs' own actions,

the harm is self-inflicted and does not qualify as irreparable harm.

**C.**  **Appellants Failed To Present Any Evidence To Show Error As To The Balance of Hardships.**

The District Court determined that the balance of hardships tips marginally

in favor of SCI. AER006. It found that the harm from releasing the video was

incremental to the harm that flows from the statements of Whipple, which

Dr. Rudolph could freely quote. However, the Court also found there is harm to

Dr. Rudolph if he is not permitted to use the corroborating evidence in his dispute

with SCI. *Id.* In assessing whether the Plaintiffs have met their burden to obtain a

preliminary injunction, the district court had a duty to balance the interests of all

parties and weigh the damage to each. *L.A. Mem'l Coliseum Comm'n v. Nat'l

Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980).

Appellants refute this finding by claiming that the District Court failed to

adequately take into account California Penal Code section 632(d) which prohibits

Defendant's use of an illegally obtained recording in subsequent litigation.

However, in making their argument, Appellants misconstrue the statute. First, as

set forth in *Crow,* the improper recording can be used for impeachment. *Id.* at 452

(citing *Frio,* 203 Cal. App. 3d at 1497). Second, the Penal Code is clear – it only

makes recording a confidential conversation an improper act. Even if we assume

that Appellants are able to establish that the conversation was confidential, and

25

subject to the penal code, it is clear that the penal code does not prohibit "use" or "dissemination" of the information that was recorded. Inasmuch as use of the information is not a further violation of the penal code, Appellants cannot establish the basis for a preliminary injunction. Penal Code section 632. Again, Appellants have failed to show any legal error, and merely point to the Court's interpretation of the facts. This is insufficient to establish clear error.

Further, Appellants conveniently ignore the harm the preliminary injunction would cause to Dr. Rudolph. The statements made in the video are dispositive of Dr. Rudolph's defamation claims and are needed not only to prove his claims but also for impeachment purposes during discovery and at trial. The parties are currently engaged in discovery in the Pennsylvania case. Depositions of key witnesses, including Whipple, cannot take place if a preliminary injunction prevents the use of this key evidence. Additionally, Appellants' false accusations against Dr. Rudolph have forced him to defend himself to close friends and family members. SER0004. The video exonerates Dr. Rudolph of these false accusations and is needed to repair the damage Appellants have caused to his reputation and restore his good standing in the community. SER0005.

**D. Appellants Failed To Establish The District Court Abused Its Discretion In Not Finding That The Public Interest Weighs Strongly In Plaintiffs' Favor.**

The District Court properly found that the public interest tips in favor of

Dr. Rudolph. AER006-7. The court reasoned "The Video is relevant evidence in

the disputes between Rudolph and Safari Club pending in Pennsylvania and

Wyoming. At least in the Pennsylvania litigation, there is no comparable bar to

using the Video as evidence. *Montone v. Radio Shack,* 698 F. Supp. 92, 95 (E.D.

Pa. 1988); *Tarnoff v. Wellingston Financial Corp.,* 696 F. Supp. 151, 152 (E.D. Pa.

1998)." Appellants contest this finding, and again point to the *facts* alleging

criminal conduct. However, once again, Appellants' argument presupposes that

the recording was confidential – and the District Court found that Appellants were

not likely to prevail on this point. Moreover, courts consistently hold that it is in

the public's interest to use recordings to impeach false testimony by witnesses.

*People v. Crow,* 28 Cal. App. 4th at 452.

Additionally, the court has a strong interest in preventing blatant forum

shopping. Appellants cannot exclude the video from being admitted as evidence in

the pending Pennsylvania case. Under Pennsylvania law, the video is admissible

regardless of whether the recording was made with the consent of all parties. *See*

*e.g. Montone v. Radio* Shack, 698 F.Supp. 92 (E.D. PA 1988) (recording of

telephone conversation is admissible regardless of whether it violates Pennsylvania

27

wiretapping laws); *Tarnoff v. Wellingston Financial Corp.*, 696 F.Supp. 151 (E.D. PA 1988) (telephone conversations that include party admissions but were recorded in violation of Pennsylvania wiretapping laws are admissible at a federal trial based on diversity jurisdiction). Knowing that the Pennsylvania court will not grant the desired relief, Appellants instead filed a separate California State Court action (the third lawsuit relating to this dispute), seeking an injunction, to prevent the use of the video in the previously filed cases. This is blatant forum shopping and an abuse of judicial resources. There is a strong public interest in preventing such abuse.

## X.    CONCLUSION

Using the proper legal standards, the District Court correctly found that Plaintiffs' had no likelihood of success on their legal claims and were therefore not entitled to injunctive relief. Once the District Court ruled, Appellees released the video. Appellants have failed to establish that the District Court abused its discretion.

For the reasons set forth above, Dr. Whipple respectfully requests the Court affirm the District Court Order denying injunctive relief.

Dated: May 27, 2014                    DUANE MORRIS LLP


                                       /s/ *Heather U. Guerena*
                                       Patricia P. Hollenbeck
                                       Michelle Hon Donovan
                                       Heather U. Guerena
                                       Counsel for Defendant-Appellee
                                       DR. LAWRENCE P. RUDOLPH

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

1.　　This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains approximately 6,626 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.　　This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)(A) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

<u>/s/ *Heather U. Guerena*</u>

DM1\4684498.2

## **STATEMENT OF RELATED CASE**

There are no appeals pending in this Court that is a related action from the District Court.

DM1\4684498.2

## **DECLARATION OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the

Court for the United States Court of Appeals for the Ninth Circuit by using the

appellate CM/ECF system in May 27, 2014.

I certify that all participants in the case are registered CM/ECF users and

that service will be accomplished by the appellate CM/ECF system.

Dated: May 27, 2012                    _____

                                        Carlos D. Armijo